# M. J. R. e SILVA *v.* EWA PLANTATION COMPANY, A CORPORATION.

## EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MAY 6, 1912.                                                DECIDED MAY 20, 1912.

### PERRY AND DE BOLT, JJ., AND CIRCUIT JUDGE ROBINSON IN PLACE OF ROBERTSON, C. J.

MASTER AND SERVANT—*fellow servants—negligence.*

> The general rule of law is that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of the employment.

> An employer is not liable for an injury to one employee occasioned by the negligence of another engaged in the same general undertaking; it is not necessary that the servants should be engaged in the same operation or particular work; it is enough, to bring the case within the general rule of exemption, if they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties tending to accomplish the same general purposes, or, in other words, if the services of each in his particular sphere or department are directed to the accomplishment of the same general end; and accordingly in the present case, upon the facts stated, the injured carpenter and those operating the train are to be considered fellow servants within the rule.

> A servant is deemed in law to have contemplated the possibility of accidents due to the negligence of his fellow servants with whom he comes in contact in the course of the performance of his duties.

### OPINION OF THE COURT BY PERRY, J.

This is an action to recover for personal injuries resulting from the alleged negligence of the defendant. The exception is to an order sustaining the demurrer to the amended declaration on the ground that it does not state a cause of action. The essential allegations of the declaration are that "on the 18th day of November, A. D. 1910, and during all the times hereinafter mentioned defendant was a sugar plantation corporation having a large number of employees engaged in different

and several departments of service of which two were, respect-
ively, the carpenter and the transportation department, each
so separated from the other that the scope of employment of
the employees of one department did not include the possibility
of coming in contact with and incurring danger from the negli-
gent performance of the duties of service by the employees of
the other department; that neither upon the beginning of
plaintiff's employment by and for defendant, nor thereafter
while so employed, nor upon the 18th day of November, A. D.
1910, were the possibility of plaintiff in the performance of
his duties as a carpenter coming in contact with the employees
of defendant operating trains upon the lands of defendant and
incurring danger from the negligent performance by such
employees of defendant operating such trains of their duties
in respect thereof, contemplated by plaintiff or defendant;"
that on the 18th day of November, 1910, "while engaged in
his duties as such carpenter and riding upon a railroad auto-
mobile of defendant over and upon the tracks of the defendant
company, on its lands at Ewa aforesaid, and particularly about
200 feet easterly of a certain pump of defendant known as
pump No. 5, said defendant by its agents and servants then
employed in the transportation department of defendant, so
carelessly, negligently and recklessly operated a train consist-
ing of locomotive and cane cars over and upon the tracks of
said defendant and upon which said railroad automobile was
then and there proceeding, that this plaintiff by said locomotive
and cane cars, without any fault or negligence on his part was
* * * precipitated to the ground," causing the injuries
complained of.

It is settled that the common law rule that a servant injured
by the negligence of a fellow servant has no remedy against
the common employer is law in this jurisdiction. *Mejea* v.
*Whitehouse,* 19 Haw. 159, 160; *Campbell* v. *Hackfeld,* 20
Haw. 33, 35. It is also settled that there are certain limitations
to this general rule. One of them is that a master owes to a

servant the duty of providing reasonably safe tools, appliances and machinery for the accomplishment of the work. Another is that it is an obligation of the employer to provide a safe place for his employees to work in. Still another limitation, recognized in other jurisdictions and perhaps not definitely considered in this, is that it is the duty of the master to employ reasonably careful and competent workmen and that for a breach of this duty he is liable to an injured fellow servant. *Mejea* v. *Whitehouse* and *Campbell* v. *Hackfeld,* supra. These are often referred to as positive duties of the master to his servants and as to them the rule is that "if instead of personally performing these obligations the master engages another to do them for him he is liable for the neglect of that other, which, in such case, is not the neglect of a fellow servant no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such," the question of liability turning rather on the character of the act than on the relations of the employees to each other. *Railroad* v. *Peterson,* 162 U. S. 346. In the latter class of cases the servant performing the master's duty is sometimes called a vice-principal, irrespective of the position ordinarily occupied by him in the master's service. The further limitation attempted in some jurisdictions, that when the servant whose negligence causes the injury is a sub-manager or foreman of higher grade or greater authority than the plaintiff such servant is a vice-principal and the employer is liable, is rejected in the majority of American jurisdictions and in Hawaii. *Mejea* v. *Whitehouse,* supra.

A clear statement of the law is that in *Railroad* v. *Conroy,* 175 U. S. 323, 328, where the court said that it had no hesitation in holding, both upon principle and authority, "that the employer is not liable for an injury to one employee occasioned by the negligence of another engaged in the same general undertaking; that it is not necessary that the servants should be engaged in the same operation or particular work, that it

is enough, to bring the case within the general rule of exemption, if they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties tending to accomplish the same general purposes, or, in other words, if the services of each in his particular sphere or department are directed to the accomplishment of the same general end." In the case at bar the declaration shows beyond doubt that at the time of the accident the plaintiff was in the employ of the defendant and that those operating the train were likewise servants of the defendant. All were in the employ of the same master, engaged in the same common enterprise, that of growing cane and manufacturing sugar, and were employed to perform duties tending to accomplish the same general purposes. The services of each in his particular sphere or "department" were directed to the accomplishment of the same general end. Prima facie they were fellow servants within the rule. "The general rule is that those entering into the service of a common master become thereby engaged in a common service and fellow servants and prima facie the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow servant." *Campbell* v. *Hackfeld,* quoting from *Railroad* v. *Peterson,* supra. See also *Randall* v. *Railroad,* 109 U. S. 478; *Railroad* v. *Baugh,* 149 U. S. 368; *Railroad* v. *Keegan,* 160 U. S. 259; *Railroad* v. *Dixon,* 194 U. S. 338. The limitation concerning vice-principals is not invoked by the plaintiff and obviously has no application. None of the positive duties of the master is shown to have been violated. There is no allegation, direct or indirect, of failure to provide a reasonably safe place to work in or reasonably safe machinery or other appliances or reasonably careful and competent men to operate the train. It is alleged that the negligence was that of the "agents and servants" of the defendant, but whether it was that of the engineer, the fireman, or brakeman or of some other servant is not disclosed. So also the plaintiff does not rely upon the doctrine

that the mere fact that the two servants are engaged in separate and distinct "departments" of the employer's business determines favorably to the plaintiff the question of the defendant's liability—a doctrine which has been specifically disavowed by the supreme court of the United States. *Quebec S. S. Co.* v. *Merchant,* 133 U. S. 375; *Railroad* v. *Hambly,* 154 U. S. 349; *Railroad* v. *Conroy,* supra.

The sole contention is that the rule of exemption of liability is based on the theory that the servant in entering the service assumes the risks of injury caused by the negligence of other servants; that the servant assumes those risks when they are "incident to negligence of servants with whom there is a possibility of contact"; that "it is only when from all the facts and circumstances of the case it can be said that the contract of employment contemplated possibility of contact with servants that the assumption of risk applies to such servants, not as to others with whom there is no possibility of contact;" that "the existence of 'departments' is but one item of many to be considered in determining whether there was possibility of contact" and that the declaration contains an express allegation to the effect that the possibility of contact was not contemplated by the parties. In support of this contention the plaintiff relies largely upon the statement in *Railroad* v. *Hambly,* 154 U. S. 349, 357, that "If the departments of the two servants are so far separated from each other that the possibility of coming in contact and hence of incurring danger from the negligent performance of the duties of such department could not be said to be within the contemplation of the person injured the doctrine of fellow servants should not apply." See also *Bridge Co.* v. *Miller,* 71 Kan. 13, 40, 41, where it was said, inter alia, that "if the process" of organization "proceeds so far that different departments become in effect distinct enterprises each one may be treated as a separate undertaking. The danger of injury from employees so completely disconnected is so remote that it may fairly be said to be excluded from the contemplation

of the parties when the contract is made." It may be assumed
for the purposes of this case that the law is as stated in the two
cases just cited. Whether in a given case it was within the
contemplation of the parties that the servant should assume
certain risks is a mixed question of law and fact. In the case
at bar the allegation "that neither upon the beginning of plain-
tiff's employment" nor at any time thereafter "were the possi-
bility of plaintiff in the performance of his duties as a carpenter
coming in contact with the employees of the defendant operating
trains upon the lands of defendant and incurring danger from
the negligent performance of such employees operating such
trains of their duties in respect thereof, contemplated by plain-
tiff or defendant" involves a conclusion of law and that con-
clusion, as well as any conclusion of fact which it may include,
and the allegation that "the carpenter and the transportation
department were so separated from each other that the scope
of employment of the employee of one department did not
include the possibility of coming in contact with or incurring
danger from the negligent performance of the duties of service
by the employees of the other department" are negatived by
the subsequent allegations that on the day named "while
engaged in his duties as such carpenter and riding upon a
railroad automobile of defendant over and upon the tracks of
the defendant company * * * said defendant by its agents
and servants, then employed in the transportation department
of defendant, so carelessly, negligently and recklessly operated
the train, consisting of locomotive and cane cars, over and upon
the tracks of said defendant upon which said railroad automo-
bile was then and there proceeding, that this plaintiff by said
locomotive and cane cars" was hurled to the ground. It is
clear from the later allegations that the plaintiff while in the
automobile on the track was in the discharge of his duties, and
the language used, taken in its ordinary acceptation, leads to the
conclusion that those operating the train were likewise doing
so in the discharge of their duty and were rightfully on the

track referred to. The probability of coming in collision with a railroad train by reason of the negligence of the engineer, conductor or other operator of the train is greatest to one who is traveling upon or in close proximity to a railroad track. Common knowledge and experience teach this and the plaintiff in undertaking duties which involved his riding in the automobile on the track should have contemplated the possibility of accidents of the general nature of the one complained of. Whether or not in fact the possibility occurred to him, in law he must be deemed to have contemplated it. See, for example, *Bridge Co.* v. *Miller, Railroad* v. *Baugh* and *Railroad* v. *Hambly,* supra.

Counsel for the plaintiff suggests that it may be that the train was not rightfully on the track upon which plaintiff's automobile was proceeding. The inference from the allegations as made is to the contrary. If the fact was as suggested the plaintiff should have included an allegation to that effect; but we do not intimate that that fact of itself would render the employer liable or the declaration sufficient.

Upon the allegations of the declaration the accident was not due to the violation of any positive duty of the employer towards the plaintiff but was caused solely by the negligence of one or more of his fellow servants in the operation of the train. The demurrer was correctly sustained.

The exception is overruled and the cause is remanded for such further proceedings as may be appropriate.

*E. C. Peters* for plaintiff.

*D. L. Withington* (*Castle* & *Withington* on the brief) for defendant.